EXHIBIT 1

# Deposition Transcript

Case Number: 2:23-CV-00179-JNW
Date: October 15, 2024

In the matter of:

# MICHAEL WRIGHT AND ALEXIS WRIGHT v STATE FARM FIRE & CASUALTY

# Christina Jalali 30(b)(6)

Reported by:
LINDSAY DEWAIDE



Steno
Official Reporters

315 West 9th Street
Suite 807
Los Angeles, CA 90015
concierge@steno.com
(310) 573-8380
NV: Firm #108F

```
1                UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF WASHINGTON
2                        AT SEATTLE
   --------------------------------------------------------
3
   MICHAEL WRIGHT AND ALEXIS WRIGHT,
4  a married couple,

5          Plaintiffs,

6      -vs-                    Case No. 2:23-CV-00179-JNW

7  STATE FARM FIRE & CASUALTY
   COMPANY, a foreign insurer,
8
           Defendant.
9
   --------------------------------------------------------
10

11

12         REMOTE 30(b)(6) DEPOSITION OF CHRISTINA

13  JALALI, a witness in the above-entitled action, located

14  in Kennewick, Washington, commencing at 9:30 a.m. PDT on

15  the 15th day of October, 2024, before Lindsay DeWaide,

16  Registered Merit Reporter, Certified Realtime Reporter,

17  and Certified Shorthand Reporter No. 23015784 in and for

18  the State of Washington.

19

20

21

22

23

24  STENO
    Concierge@Steno.com
25  (888)707-8366
```

Page 2

```
1   REMOTE APPEARANCES:
2   FOR THE PLAINTIFFS:
3          CEDAR VIEW LAW, PLLC
           BY:  MS. HEATHER N. DERENSKI
4          108 Union Avenue
           Snohomish, Washington 98290
5          425.460.0080
           heather@cedarviewlaw.com
6
           KARL E. MALLING, P.S.
7          BY:  Karl E. Malling
           1429 Avenue D, Suite 167
8          Snohomish, Washington 98290
           206.629.5240
9          karl@mallinglaw.com
10
11  FOR THE DEFENDANT:
12         SINARS SLOWIKOWSKI TOMASKA LLC
           BY:  MR. JAMES D. HICKS
13         2815 Elliott Avenue, Suite 100
           Seattle, Washington 98121
14         206.705.2115
           jhicks@sinarslaw.com
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
1                    INDEX
2                  EXAMINATION
3   BY MS. DERENSKI                        PAGE
4                                            5
5
6          PLAINTIFF EXHIBITS
7   NUMBER                       PAGE IDENTIFIED
8   Exhibit 1   Amended Notice of Deposition   12
            of State Farm Fire &
9           Casualty Company Under Fed.
            R. Civ. P. 30(b)(6) Designee
10
        Exhibit 2   Claim File, Bates Nos.      38
11          09.10.2004_WRIGHT_SFFCC_0000
            01 - 006205
12
        Exhibit 3   Email Correspondence, Bates  196
13          WRIGHTM00002827 - 2868
14      Exhibit 4   Email Correspondence, Bates  214
            WRIGHTM00003661 - 3664
15
16
17            DEFENDANT EXHIBITS
18  NUMBER                       PAGE IDENTIFIED
19  Exhibit 1   10/9/24 Letter Re: Wright v.    15
            State Farm (WAWD No.
20          2:23-cv-00179-JNW) State
            Farm's objections to
21          plaintiff's FRCP 30(b)(6)
            notice
22
23
24
25
```

Page 4

```
1             TRANSCRIPT OF PROCEEDINGS
2             THE COURT REPORTER:  The attorneys
3   appearing in this deposition acknowledge that I am not
4   physically present in the deposition room, that I will
5   be reporting this deposition remotely, and that I will
6   administer the oath to the witness remotely.
7             If any party has an objection to this
8   manner of reporting or anything stated above, please
9   state so now.
10            MR. HICKS:  No objection from State Farm.
11            THE COURT REPORTER:  Hearing no objections,
12  we can proceed.
13            (Witness is sworn.)
14            MR. HICKS:  All right.  Before we begin,
15  I'd like to state an objection for the record, please.
16            MS. DERENSKI:  Mr. Hicks, this is my
17  deposition.  I'd like to proceed, please.
18            MR. HICKS:  I'm just stating an objection
19  for the record.
20            My objection is that State Farm has
21  produced this witness, Ms. Jalali, for the purposes of
22  addressing topics No. 1, 2, 7, 8, 9, 13, and 14, and
23  has offered a second witness to appear on Thursday,
24  October 24th, for the remainder of the topics
25  identified in the plaintiffs' 30(b)(6) deposition
```

Page 5

```
1   notice.
2             Thank you.
3             CHRISTINA JALALI, called as a witness
4   herein, having been first duly sworn on
5   oath, was examined and testified as
6   follows:
7             E X A M I N A T I O N
8   BY MS. DERENSKI:
9   Q.   Good morning, Ms. Jalali.
10  A.   Good morning.
11  Q.   It's nice to see you again.
12  A.   You too.
13  Q.   I know it's been a while.
14       Would you state your full name for the record,
15  please.
16  A.   Christina Jalali.
17  Q.   Okay.  And where are you today for your
18  deposition?
19  A.   I'm in Kennewick, Washington.
20  Q.   Okay.  And what is your business address?
21  A.   It is 212501 East Finley Road in Kennewick,
22  Washington 99337.  That is where I'm physically
23  located.  No mail comes to this address.  It would all
24  go to the Illinois address.
25  Q.   Okay.  And is that your home?
```

CHRISTINA JALALI 30(B)(6)                                              JOB NO. 1194411
OCTOBER 15, 2024

Page 258

1  June 9, 2023, at 10:53 a.m. Central Time, Tim Treat
2  stated that he received an email from the
3  policyholder's attorney. They dispute the CRS version.
4         Then it goes down into Bates page 48, received
5  email outlining the disputes. And he noted that he
6  requested a copy of the lease from CRS. The insured is
7  responsible for the items in the house, not State Farm.
8  We are not a party to the lease.
9         So, yes, Tim did request. And I can't speak
10 for him. I do -- from my review of the file, he was
11 trying to assist in obtaining information to give to
12 you, to give to the insured so they better understood
13 because this was outside of the fire loss, it was
14 between CRS and the policyholder.
15 Q.  Okay. So my question was a little bit
16 different.
17       So I just want to find out -- and we didn't
18 scroll all the way up into these file notes -- that if
19 State Farm ever received any evidence of any damages --
20 and we talked about that there weren't photos that you
21 recall receiving of damage, but I'm just trying to see
22 if there was any other evidence that may have been
23 received regarding damage to this -- alleged damage to
24 this furniture rented by CRS.
25       MR. HICKS: That has been -- objection.

Page 259

1  Asked and answered. It calls for a legal conclusion
2  regarding evidence. And this witness has already
3  answered that question, including identifying a phone
4  call.
5         Subject to those objections, Ms. Jalali,
6  you may answer the question.
7         THE WITNESS: Review of the file, I do not
8  see photos of the damage or an itemized statement of
9  the damages. And because this is between the insured
10 and CRS, I would not expect that we would have to have
11 those in the file.
12        We were not -- it was not part of the fire
13 loss. It was not needed to document the fire loss. It
14 was between the insured and CRS. And if the -- if
15 photos were requested, if the insured requested photos
16 or if the insured requested the itemization, that,
17 again, would go to CRS, and CRS would give that to the
18 insured or maybe you, if you requested it. I don't see
19 in the file note where we requested photos or an
20 itemization.
21 BY MS. DERENSKI:
22 Q.  Okay. So the furniture that is the topic that
23 we were just discussing was rented on behalf of the
24 Wrights for their temporary housing; is that correct?
25       MR. HICKS: Objection to the extent that it

Page 260

1  calls for a legal conclusion and misstates the evidence
2  in the record.
3        Go ahead, Ms. Jalali.
4        THE WITNESS: The policy owes for -- the
5  policy has coverage for the additional living expenses,
6  and CRS was billing State Farm for the increase in --
7  the Wrights' increase in living expenses, which include
8  the temporary housing, included the fee. We were
9  paying the fee that they were being charged for the
10 furnishings.
11       But State Farm did not sign a lease or an
12 agreement to be responsible for those furnishings or
13 for the house. We were providing coverage under the
14 policy to pay for the increase in monthly expenses.
15 BY MS. DERENSKI:
16 Q.  If I ask you questions regarding compensation
17 of Mr. Treat or any other State Farm employees involved
18 in this case, are you going to be able to answer that?
19       MR. HICKS: Well, I have an objection to
20 that, and the objection is that that calls -- if you're
21 asking for specific dollar amounts of compensation to
22 employees of State Farm, that that information is
23 private and confidential and not relevant or
24 proportional to the needs of this case. It is
25 therefore in violation of Rule 26 and the limitations

Page 261

1  provided under that rule.
2        It is also subject to protection given
3  to -- in privacy and confidentiality. And because that
4  is protected information, I am going to direct my
5  client not to disclose any specific financial dollar
6  amounts of compensation to any people who work for
7  State Farm.
8        MS. DERENSKI: Okay. Counsel, your
9  objection is noted. You do not have a protective order
10 for this deposition today.
11 BY MS. DERENSKI:
12 Q.  Ms. Jalali, would you be able to answer
13 questions related to any performance reviews related to
14 the employees involved in the case -- in the claim?
15 I'm sorry.
16       MR. HICKS: I have an objection to that,
17 and that is because that is outside of the topics for
18 which this witness was identified and designated to
19 respond to. We have offered up a witness on
20 October 24th who will be able to respond to those
21 topics. But this witness was not identified for that
22 purpose, so that's the objection there.
23       MS. DERENSKI: Are you directing the
24 witness not to answer?
25       MR. HICKS: No, I'm not on that one, but I

CHRISTINA JALALI 30(B)(6)
OCTOBER 15, 2024

JOB NO. 1194411

Page 262

1   am stating the objection.
2               MS. DERENSKI:  Okay.
3               Madam Court Reporter, could you please read
4   the question back for the witness?
5               (Record read back as requested.)
6               MR. HICKS:  I'll reinvoke all the stated
7   objections that I just did, and I will also add to that
8   that the topic that does address this area of inquiry
9   is Topic No. 4, "Criteria and process used to evaluate
10  employee performance for the employees involved in the
11  Wrights' claim."  It goes on with other language.
12              But like I stated, this witness has not
13  been identified for the purpose of responding to that
14  topic, and we have offered a witness for October 24th
15  to respond to that topic.
16              Subject to that objection, Ms. Jalali, you
17  may answer if you can.
18              THE WITNESS:  I have not been prepared to
19  discuss on that topic, so I do not have -- I'm not able
20  to discuss compensation.
21  BY MS. DERENSKI:
22      Q.   Do you know how many other insurance bad faith
23  lawsuits have been filed against State Farm for the
24  state of Washington since 2021?
25              MR. HICKS:  Objection.  That is the subject

Page 263

1   of Topic No. 20, arguably No. 21, and 22.  And this
2   witness was not identified by State Farm to respond to
3   those topics of inquiry.
4               Subject to those objections, Ms. Jalali,
5   you may answer.
6               THE WITNESS:  I was not prepared to discuss
7   that topic.  I do not have the answer to that question.
8   BY MS. DERENSKI:
9       Q.   Do you know how many insurance commissioner
10  complaints have been filed against or -- let me
11  rephrase that.
12              Do you know how many insurance commissioner
13  complaints have been filed, including Mr. Treat, in the
14  concerns alleged in the insurance commissioner
15  complaint since 2021?
16              MR. HICKS:  Same exact objection to the
17  last question.
18              Subject to that objection, Ms. Jalali,
19  you may answer.
20              THE WITNESS:  I was not asked or prepared
21  to discuss that topic.  I do not have an answer for
22  you.
23  BY MS. DERENSKI:
24      Q.   If I ask you about State Farm's affirmative
25  defenses in this case, will you be able to answer any

Page 264

1   questions?
2               MR. HICKS:  That's also a topic that this
3   witness was not identified to respond to.  That
4   particular topic is Topic No. 10.
5               And, again, we've offered another witness
6   to address that subject matter in Topic No. 10 on
7   October 24th.
8               MS. DERENSKI:  Counsel, your objections are
9   going on and on and on.  You're just delaying this
10  deposition.
11              So, once again, I'll remind you that you
12  picked this date for this deposition.  You knew the --
13  you knew the topics of the notice.  And days ago, you
14  suggested that this deposition be bifurcated, to which
15  we did not agree, and we are not obligated to agree to.
16              So I am entitled to ask the questions to
17  the witness, and if the witness can't answer, the
18  witness can say that they can't answer, but you cannot
19  consistently object and continue to delay this
20  deposition.
21              If you have another objection, such as to
22  form or privilege, you're welcome to make it.
23              MR. HICKS:  Well, I respectfully disagree
24  with you and --
25

Page 265

1   BY MS. DERENSKI:
2       Q.   Ms. Jalali, are you able to --
3               MR. HICKS:  -- I'm going to --
4   BY MS. DERENSKI:
5       Q.   -- answer any questions today --
6               MR. HICKS:  Let me continue with my
7   objection, please, and my response.
8               I respectfully disagree with you and what
9   you just said.  I believe that it is State Farm's right
10  under the rules to designate more than one witness for
11  a 30(b)(6) deposition, and that's exactly what we've
12  done.
13              And we gave notice of our concern on that
14  and the explanation for why we thought that that was
15  appropriate last Monday, on October the 7th, 2024.
16              MS. DERENSKI:  And since you brought that
17  up for the record, your recommendation was so that we
18  could review discovery that was due to us in August of
19  2023 that has yet to be produced, but you continue to
20  insist that it is -- and I will put this in air
21  quotes -- imminently coming.
22              Isn't that right?
23              MR. HICKS:  I'm not going to get into a
24  back-and-forth with you.  The record and the
25  communications speak for themselves.

CHRISTINA JALALI 30(B)(6)
OCTOBER 15, 2024

JOB NO. 1194411

Page 274

1  for the three breaks that we've taken.
2           (Discussion held off the record.)
3  BY MS. DERENSKI:
4      Q.   State Farm has a program called Total Rewards;
5  is that correct?
6      A.   Yes.  Total Rewards, yes, we have that.
7      Q.   Okay.  And what is that program?
8      A.   The Total Rewards is a complete outline that
9  provides all the available benefits to an employee.  It
10 can include retirement, 401(k), dental.  It can include
11 resources for counseling, life source -- different
12 programs.
13          There are places to go to sign up for perks
14 throughout different companies that offer State Farm
15 employees discounts on items.  It goes into financial
16 planning.  There's resources.  It provides a whole
17 umbrella of all the benefits that are available to an
18 employee.
19     Q.   Okay.  And State Farm has an incentive program;
20 is that correct?
21          MR. HICKS:  Objection.  This is outside the
22 scope of the topic for which this witness was
23 identified.  Again, this is Topic No. 3 --
24          MS. DERENSKI:  Okay.  Mr. Hicks, we are
25 running out of time, and I am entitled to ask these

Page 275

1  questions.
2           So you've made your objection known.
3  Please -- I'm going to have to ask the court for
4  additional time just because of the number of lengthy
5  objections that are inappropriate.
6  BY MS. DERENSKI:
7      Q.   So, Ms. Jalali, could you please answer the
8  question?
9           MR. HICKS:  Well, I just want to state that
10 it's Topic No. 3 that you're -- that this line of
11 questioning --
12          MS. DERENSKI:  Thank you for confirming --
13          MR. MALLING:  You said that a hundred
14 times.
15          MS. DERENSKI:  Thank you for confirming
16 that it falls squarely within my Exhibit A that I have
17 produced.
18 BY MS. DERENSKI:
19     Q.   So, Ms. Jalali, I'm sorry.  Can you --
20     A.   There is an enterprise incentive program, and
21 then there is a management incentive program.
22     Q.   Okay.  And what is involved in the enterprise
23 incentive program?
24          MR. HICKS:  This is -- this is another
25 objection.

Page 276

1           MR. MALLING:  It doesn't matter.  She can
2  answer the question if she knows.  It doesn't matter
3  what the question is.
4           MS. DERENSKI:  Mr. Hicks, yes, as
5  Mr. Malling just said, Ms. Jalali can answer the
6  question.  Please stop objecting.  You're running out
7  the clock intentionally.
8  BY MS. DERENSKI:
9      Q.   I'm sorry, Ms. Jalali.  Go ahead and continue.
10          MR. HICKS:  I've stated my objection.  It's
11 outside the scope of the topics that were assigned to
12 this witness.
13          Go ahead, Ms. Jalali.
14          THE WITNESS:  I was not prepared to discuss
15 that topic.  I wasn't asked to discuss that topic, but
16 I can --
17          MR. MALLING:  Doesn't matter.  Does she
18 know.
19          THE WITNESS:  I'm trying to answer.
20 BY MS. DERENSKI:
21     Q.   Go ahead, Ms. Jalali.  I'm sorry.  Please
22 proceed.
23     A.   Thank you.
24          I'm not being difficult.  Can you just repeat
25 specifically what I was going to answer about the

Page 277

1  incentive programs, the question, please?
2      Q.   Yeah.  So what does the -- I'm sorry.  You
3  called it -- is it enterprise incentive program?
4      A.   That's correct.  The EIP is the enterprise.
5      Q.   Yeah.  So what does that entail?
6      A.   Okay.  I don't have the --
7           MR. HICKS:  I'm also going to object to
8  this to the extent that it is confidential information
9  and subject to a protective order.
10          Go ahead, Ms. Jalali.
11          THE WITNESS:  What I can answer about that
12 in general, generally speaking of the program, I can
13 tell you that the incentive -- the enterprise incentive
14 program does not take into consideration claim
15 handling, claim amounts that are paid.  It has nothing
16 to do with the claim handling.
17          It has to do with enterprise results when
18 we look at various different things within the company,
19 but it absolutely has nothing to do with claim
20 handling.
21 BY MS. DERENSKI:
22     Q.   Okay.  So does claim handling or an adjuster's
23 performance have any bearing on their annual review?
24          MR. HICKS:  Objection.  Outside the scope
25 of the topics that this witness was identified for.

CHRISTINA JALALI 30(B)(6)
OCTOBER 15, 2024

JOB NO. 1194411

Page 278

1    Also compound.
2            Go ahead, Ms. Derenski -- or, I'm sorry,
3    Ms. Jalali, to the extent that you can.
4            THE WITNESS:  When we take a look at the
5    performance, there are expectations not met,
6    expectations met, or exceeding expectations.  And those
7    are based around how they perform their job.  Not about
8    indemnity, but are they staying in contact?  Are they
9    communicating?  Are they providing the service to our
10   insureds that we owe to the insured?  Are they showing
11   up for work on time?
12           Those are the types of things that does
13   play a part of the enterprise incentive program.  It's
14   not all of it.  The employee can get half of the
15   enterprise incentive.  It varies.
16           But from my understanding of the enterprise
17   incentive program, again, it is not based on anything
18   to do with specific claim handling, indemnity amounts.
19   It's about the performance, the overall, of that claim
20   associate, that employee, as well as different results
21   that I cannot speak to because I was not prepared to do
22   that of all these different results and measurements
23   that come into that EIP, the enterprise incentive
24   program, and how much that person gets.  And it also
25   depends on their salary.  So there's a lot of different

Page 279

1    moving parts to that.
2            Did I answer everything?
3    BY MS. DERENSKI:
4    Q.   Okay.  So does part of their annual review --
5    is it based on company performance as well?  And let me
6    clarify what I mean by that.
7            So as I understand some of the documents we
8    received, that there is different metrics, and some of
9    those metrics may involve the company's performance as
10   well.
11           So does the company's performance factor into
12   the annual compensation increase or bonus that an
13   adjuster or claim associate or employee may receive?
14           MR. HICKS:  Objection.  Outside the scope
15   of the topics this witness was identified for.
16           Go ahead, Ms. Jalali.
17           THE WITNESS:  If we could bring up
18   Tim Treat's file, and if you can point me to which
19   specific metric report -- from my recollection of
20   reviewing his file last night, the metrics were more
21   about rating of meeting expectations, not meeting
22   expectations, and it explains what those are.
23           The -- so I would like to know specifically
24   what -- the metrics that you're referring to because I
25   don't know which metrics you're referring to to be a

Page 280

1    part of them or not.
2    BY MS. DERENSKI:
3    Q.   So I'm not necessarily referring to Mr. Treat's
4    employee file.  I'm -- in general, as far as the
5    enterprise incentive program goes, some of the
6    documents we received that we reviewed mentioned that
7    it was, from what I could gather, based on how the
8    company performed overall, and then that set a
9    percentage of some sort.
10           And then there were various calculations, it
11   looked like, based -- that would be applied to an
12   individual's annual increase based, at least in part,
13   on how the company performed.
14           Could you help me better understand that, or do
15   you understand the question?  I'm sorry.
16           MR. HICKS:  Objection.  Compound.  Outside
17   the scope of the topics that this witness was
18   identified to respond to.
19           Go ahead, Ms. Jalali.
20           THE WITNESS:  I will do my best to provide
21   an answer to that.  Again, I apologize.  I was not
22   prepared to discuss that topic or look over the
23   documents for that.
24           There are a lot of different metrics that
25   go into that.  When we take a look at the company's

Page 281

1    results -- and now, forgive me.  There's the management
2    incentive -- or enterprise incentive.  But how many
3    policies, auto policies, fire policies that were
4    written, it's outside of the claim handling.  But, like
5    you mentioned, it is the company's -- how the company
6    is doing as far as profit/loss ratio, how many policies
7    we've gained, how many policies we've lost.
8            Those are factors outside of the claim
9    handler's control that does play into -- not all of it,
10   but play into the part of the percentage available.
11   And then it goes down to individual performance of how
12   much of that percentage and where you fall in your
13   salary.
14           There's so many -- it's a very complicated
15   process, and there's a lot of different things that go
16   into it, and that -- I am not prepared to go into
17   specific details.
18   BY MS. DERENSKI:
19   Q.   Okay.  So I just want to summarize to make sure
20   I at least kind of understand, you know, what you're
21   saying here, and please correct me if I -- if I make a
22   mistake.
23           So there are company objectives that -- or
24   metrics that factor into an individual's annual review.
25   And what that means is if the company has met certain

CHRISTINA JALALI 30(B)(6)
OCTOBER 15, 2024

JOB NO. 1194411

Page 282

1  goals, then there's a percentage available for annual
2  increase.
3        And of that percentage, then it's -- so if
4  there's -- of that percentage, the employee's
5  individual performance would then -- or salary may
6  affect how much of that available percentage they're
7  entitled to.
8        Is that close or am I getting there?  Can you
9  help me?
10       MR. HICKS:  Objection.  Compound, outside
11 the scope of the notice topics that this witness was
12 identified for, and misstates prior testimony, and
13 asked and answered.  She just gave you the answer.
14       Subject to those objections, Ms. Jalali, go
15 ahead.
16       THE WITNESS:  Trying to summarize this, and
17 I don't want to use any keywords or metrics that are
18 not on any documents that you've had, but it's the
19 company results -- at a high, high level, company
20 results, again, of how many policies gained, lost.
21       And there's calculations that go into that.
22 I can't talk specifically of those because I was not
23 prepared to give you very specific details of what goes
24 into that.  It's not claim handling.  It's not anything
25 to do with an indemnity paid per claim.

Page 283

1        Then the profit/loss of the -- as a
2  corporation, how much money is available to divide --
3  available for performance reviews.  Performance
4  assessments.  This is how much, you know, money.
5        And then according to that individual's
6  performance, depending on what level they are and what
7  they -- how they were rated, then they will get a
8  certain percent.  And there's a whole long calculation
9  of how that is arrived at.
10 BY MS. DERENSKI:
11    Q.  Okay.  Thank you.
12        And you said depending on what level they are.
13 And Mr. Treat is what level?
14    A.  So there's different levels.  There's levels
15 when you are rating an employee at the end of the year
16 for their performance, and then there's levels of
17 claims adjusters.  There's three different levels of
18 claims adjusters, and Tim Treat is a P6, which used to
19 be an RA3, RB3.
20    Q.  Okay.  And so that's a pretty high-level claim
21 adjuster; is that right?
22        MR. HICKS:  Objection.  Vague.
23        Go ahead, Ms. Jalali.
24        THE WITNESS:  The P6, which used to be the
25 RA, RB3, is the highest level for a claims adjuster.

Page 284

1  That's the highest level you can go.
2  BY MS. DERENSKI:
3     Q.  Okay.  Thank you for that.
4         And then you mentioned that there were other
5  levels that may apply.
6         Could you clarify what you meant by other
7  levels that may apply or impact the rating?
8     A.  Yes.  Depending on what year we look at, there
9  was a rating of one to three.  One, you're not meeting
10 expectations; two, you're meeting expectations; three,
11 you exceeded them.
12        At present time, there are five different
13 levels, one being you are absolutely not meeting
14 expectations, and then five, you are going above and
15 beyond, which would include you are a mentor.  You're
16 training.  You are getting ready for that next level,
17 perhaps.  So that's the one through five that is
18 currently used.
19    Q.  Okay.  Thank you for that.
20        And do you have any recollection of Mr. Treat's
21 2022 rating and compensation at the end of the year of
22 his -- let me rephrase that.
23        Do you have any recollection of how his
24 performance review went for 2022?
25    A.  I would want to bring it up to review

Page 285

1  completely, and that way I'm not mixing it up with my
2  own reviews that I've had of him.
3     Q.  Okay.  And so who would have performed his
4  performance review in 2022?
5     A.  That's one of the reasons I'd want to bring up
6  the document.  From my -- if I remember right, it would
7  be Necia Riddell.  I'd have to see the document of who
8  completed what year.
9         I came in right at the -- at the end.  I came
10 in December, but the review was already done, I
11 believe, by Necia Riddell, the team manager at that
12 time.
13    Q.  Okay.  And --
14        MR. HICKS:  All right.  At this time, it's
15 5:18, and we're going to conclude the deposition at
16 this time.
17        MS. DERENSKI:  Okay.  Well, I'm going to
18 note for the record that we were not done with our
19 deposition, and we are going to reserve our right to
20 continue this deposition given the witness was not
21 prepared to speak on all of the topics and the lengthy
22 objections which ate up a considerable amount of time
23 today that were both unnecessary and inappropriate.
24        And is it your position, Mr. Hicks, that
25 you believe that we've exceeded seven hours of actual

CHRISTINA JALALI 30(B)(6)
OCTOBER 15, 2024

JOB NO. 1194411

Page 286

```
1   deposition testimony?
2            MR. HICKS:  Yes.  Yes.
3            THE COURT REPORTER:  Will you be ordering a
4   copy of this transcript?
5            MS. DERENSKI:  We'll be ordering.  Thank
6   you.
7            MR. HICKS:  Yes.  I will be ordering too.
8   Electronic copy only with the exhibits, please.  And in
9   the E-Tran.
10           MS. DERENSKI:  PDF, with no exhibits,
11  please.
12           (Remote deposition concluded at
13           5:20 p.m.)
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 287

```
1               C E R T I F I C A T E
2
3        I, Lindsay DeWaide, a Registered Merit
4   Reporter, Certified Realtime Reporter, and Certified
5   Shorthand Reporter in and for the State of Washington,
6   do hereby certify that the foregoing transcript of the
7   deposition of Christina Jalali, having been duly sworn,
8   on October 15, 2024, is true and accurate to the best of
9   my knowledge, skill, and ability.
10       I further certify that I am not a relative or
11  employee or attorney or counsel of any of the parties,
12  or a relative or employee of such attorney or counsel,
13  or financially interested directly or indirectly in this
14  action.
15       IN WITNESS WHEREOF, I have hereunto subscribed
16  my name, this 21st day of October, 2024.
17
18
19           LINDSAY DEWAIDE, RMR, CRR
             CSR No. 23015784
20
21
22
23
24
25
```

Page 288

```
1
2
3
4            I have read the foregoing deposition
5   transcript and by signing hereafter, subject to any
6   changes I have made, approve same.
7
8
9
10           _____
             CHRISTINA JALALI
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 289

```
1               CHANGES AND SIGNATURE
2
3   WITNESS NAME:   CHRISTINA JALALI   DATE: 10/15/2024
4
5   PAGE/LINE           CHANGE              REASON
6   _____
7   _____
8   _____
9   _____
10  _____
11  _____
12  _____
13  _____
14  _____
15  _____
16  _____
17  _____
18  _____
19  _____
20  _____
21
22  Executed this _____ day of _____,_____
23
24           _____
25           CHRISTINA JALALI
```