UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL WRIGHT; ALEXIS WRIGHT, <br><br> Plaintiffs, <br><br> v. <br><br> STATE FARM FIRE AND CASUALTY COMPANY, <br><br> Defendant. | CASE NO. 2:23-cv-179 <br><br> ORDER DENYING SUMMARY JUDGMENT MOTIONS |

## 1. INTRODUCTION

This matter comes before the Court on Plaintiffs Michael and Alexis Wright's ("the Wrights") and Defendant State Farm Fire and Casualty Company's ("State Farm") cross motions for summary judgment. Dkt. Nos. 85, 88. Having reviewed the parties' briefing, the record, and the law, and being otherwise fully informed, the Court, for the reasons stated below, DENIES the Wrights' motion for summary judgment and DENIES State Farm's motion for summary judgment.

## 2. BACKGROUND

This action arises from a November 26, 2021, fire that extensively damaged the Wrights' family home. Dkt. No. 89-1 at 2. At the time of the fire, the Wrights had active homeowner's insurance with State Farm. Dkt. No. 89-3.

The Wrights filed a claim with State Farm on the day of the fire. Dkt. No. 89-1 at 2. Immediately, State Farm confirmed coverage and approved a hotel stay. *Id.* at 67–69. State Farm assigned the claim to adjuster Timothy Treat, who inspected the home on November 29. *Id.* at 67. He concluded in the Wrights' claim file that the "[i]nterior is a total gut on main level" and that "[a]ll [personal property] items on the main floor are totaled." *Id.* On December 3, State Farm issued $5,000 to the Wrights as advance coverage for personal property damage. *Id.*

According to the Wrights, after providing this initial coverage, State Farm offered almost no further guidance, information, or assistance. The Wrights testified during their depositions that they did not understand their policy or coverage, had no relevant experience or knowledge, and found Treat difficult to reach. *See, e.g.*, Dkt. Nos. 89-2 at 5-6. The Wrights provided several examples of their difficulty communicating with Treat. For one, according to the Wrights, no one instructed them on how to obtain living expense benefits. *See* Dkt. No. 89-2 at 4-5. As a result, they submitted meal expenses without including itemized receipts, leading to denial of coverage. Dkt. No. 89-1 at 61. As another example, the Wrights point to the December 3 entry in their claim file, in which Treat noted that he would "send [the Wrights an] email of [State Farm's] import tool" so they could inventory their damaged property for coverage. Dkt. No. 89-1 at 67. Yet in the same entry he also

noted that they lack "a computer for internet," casting doubt on their ability to use the import tool. *Id.*

Around January 12, 2022, Treat completed his structural repair estimate of the Wrights' home. Dkt. No. 89-6 at 7. To do so, he used a software program called Xactimate, which the Wrights allege "is designed with input and pricing data primarily sourced from the insurance industry" with the goal of "cost containment." Dkt. No. 88 at 17. This initial estimate totaled $181,277.82 in structural repair costs. Dkt. No. 89-1 at 63-64.

A few weeks later, State Farm issued a payment of $150,899.53 to the Wrights, equaling the structural repair estimate less a "deduction for depreciation." Dkt. No. 89-7 at 2. An accompanying letter explained that State Farm's structural repair estimate was "based on estimated market pricing for the cost of materials, labor, and other factors[.]" *Id.* at 4. The letter instructed the Wrights to "contact [State Farm] prior to beginning repairs" if "[their] contractor's estimate is higher than [State Farm's]," in which case "State Farm will work with [them] and [their] contractor to determine the actual and necessary cost of covered repairs[.]" *Id.*

On February 8, 2022, State Farm management conducted a "reinspection" of Treat's handling of the Wrights' claim to ensure accuracy. Dkt. No. 89-4 at 20. The reinspection concluded that Treat had "overscoped"—that is, overestimated and overpaid—the Wrights' structural damages. *See* Dkt. Nos. 89-6 at 16-17; 89-25.

Meanwhile, the Wrights, after a lengthy search, found a contractor willing to repair their home for an estimated cost of $259,244.61. Dkt. No. 89-1 at 49. They submitted this estimate to State Farm around June 1, 2022. *Id.* Right away, Treat

ORDER DENYING SUMMARY JUDGMENT MOTIONS - 3

responded that he could not reconcile the contractor's estimate with his own; he therefore requested an itemized breakdown. Dkt. No. 89-2 at 13. On July 21, the Wrights complied, sending Treat an itemized breakdown with subcontractor bids. *Id.* at 22. A week later, Treat met with the Wrights' contractor to discuss, and on August 4, 2022, State Farm issued a supplemental payout of $76,571.18 to the Wrights. Dkt. Nos. 89-1 at 13; 89-12 at 2. According to the Wrights, this payment underpaid their contractors' estimate by $47,527.24, and Treat, in the accompanying letter, neither acknowledged nor explained this discrepancy. Dkt. Nos. 113 at 6; 89-12 at 2.

In late August 2022, the Wrights retained counsel, who took over communications with State Farm. Dkt. No. 89-4 at 15. Over the following months, the Wrights' counsel and Treat exchanged contentious emails, with the Wrights' counsel asserting that Treat had obfuscated and delayed the process, and Treat asserting that the Wrights had failed to do their part. *See* Dkt. No. 89-16.

On October 31, the Wrights issued their first 20-day Insurance Fair Conduct Act (IFCA) Notice, claiming a cause of action against State Farm for unreasonable denial of coverage and payment of benefits. Dkt. No. 89-19 at 2. On November 21, 2022, the Wrights filed this lawsuit in state court, asserting claims for (1) breach of contract, (2) violations of the Consumer Protection Act (CPA), RCW 19.86 *et seq.*, (3) insurance bad faith, and (4) violation of IFCA, RCW 48.30.015. Dkt. No. 1-2. On February 6, 2023, State Farm removed the action to this Court. Dkt. No. 1.

The parties' dispute over coverage has continued throughout this litigation. On December 6, 2022, the Wrights filed an Amended IFCA notice, adding claims for

unpaid utility and meal costs. Dkt. No. 89-19 at 11. In February 2023, the Wrights sent supplemental building invoices to State Farm, Dkt. No. 89-20 at 3, which according to the Wrights, State Farm did not cover. Dkt. No. 88 at 10. On June 22, 2023, the Wrights submitted a Supplemental IFCA Notice addressing these unpaid invoices and other complaints. Dkt. No. 89-19 at 14.

Meanwhile, in March 2023, Treat conducted another review of the contractor's estimate. This time, "[Treat's] estimate ended up being just a little bit *more* than" the contractor's estimate. Dkt. No. 89-6 at 15 (emphasis added). As a result, State Farm agreed to settle the claim based on the contractor's estimate. Dkt. No. 89-1 at 21. According to the Wrights, this course correction did not result from any new information to which State Farm did not have access upon its initial receipt of the contractor's estimate in June 2022. Dkt. No. 88 at 11.

Both parties now move for summary judgment on the Wrights' contractual and extracontractual claims. Dkt. Nos. 85, 88.

### 3. DISCUSSION

**3.1   Legal standard.**

"[S]ummary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Frlekin v. Apple, Inc.*, 979 F.3d 639, 643 (9th Cir. 2020) (citation omitted). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a

summary judgment motion, courts must view the evidence "'in the light most favorable to the non-moving party.'" *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906 (9th Cir. 2019) (internal citation omitted). "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Summary judgment should also be granted where there is a "complete failure of proof concerning an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**3.2     The Wrights' motion for summary judgment.**

   **3.2.1     Genuine issues of material fact preclude summary judgment on the Wrights' insurance bad-faith claim.**

"[A]n insurer has a duty of good faith to its policyholder and violation of that duty may give rise to a tort action for bad faith." *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1276 (2003). "To succeed on a bad faith claim, the policyholder must show the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded." *Id.* at 1277. There is no bad faith where "there is a debatable question regarding coverage for the loss, and the denial of coverage is based on a reasonable interpretation of the insurance policy." *Capelouto v. Valley Forge Ins. Co.*, 990 P.2d 414, 422 (1999). "The determinative question is reasonableness of the insurer's actions in light of all the facts and circumstances of the case." *Anderson v. State Farm Mut. Ins. Co.*, 2 P.3d 1029, 1033 (Wash. Ct. App. 2000). Thus, whether an insurer acted in bad faith is usually a question of fact for the jury. *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 196 P.3d 664, 668 (Wash. 2008) (en banc).

The Wrights make many factual assertions to support their bad-faith claim. In general, they allege that Treat, the adjuster assigned to their claim, was unhelpful and unresponsive. More specifically, they allege that Treat sent them a computer-based tool to inventory their personal property claims despite knowing they lacked a computer. They allege that Treat failed to instruct them on how to claim meal and utility expenses, leading to denial of coverage. They allege that State Farm intentionally used the Xactimate software program to underestimate structural repair costs. They allege that State Farm, with no explanation, issued a compromise settlement $47,527.24 short of the itemized estimate provided by their contractor. They allege that State Farm's management, through the "reinspection" of Treat's work, found that Treat failed to accurately estimate their home repair costs. They allege that State Farm, in general, deploys compensation policies that encourage adjusters to deny or weaken coverage. And they argue that State Farm forced them to bring suit to receive the benefits of their policy.

These assertions are plausible. And a jury may deem them sufficient to find bad faith. But they are far from sufficient to establish bad faith as a matter of law. In general, "[w]hether an insurer acted in bad faith is a question of fact." *Smith*, 78 P.3d at 1277. And here, the Court cannot conclude from the available record that State Farm acted in bad faith. The facts indicate that State Farm immediately confirmed coverage upon the Wrights filing their claim, paid cost-of-living benefits throughout the period of the Wrights' displacement, conducted multiple in-depth reviews of the Wrights' structural repair costs, and ultimately agreed to cover the

ORDER DENYING SUMMARY JUDGMENT MOTIONS - 7

home repair estimate provided by the Wrights' contractor. The Court cannot conclude that this course of action fell short of applicable standards for good faith.

Moreover, as State Farm rightfully points out, "[t]he essence of a bad faith claim is to demonstrate harm." Dkt. No. 85 at 7; *see Smith*, 78 P.3d at 1277 ("Claims by insureds against their insurers for bad faith are analyzed applying the same principles as any other tort: duty, breach of that duty, and *damages proximately caused by any breach of duty*.") (emphasis added). According to State Farm, State Farm has already paid the Wrights a total $433,000, "which includes over $36,000 in structural upgrade *overpayments*" (emphasis added) and is "above and beyond even the value of their home." *Id.* While it is possible that a jury could find, based on the above facts, that State Farm exhibited bad faith, it is also possible that a jury could find that there was no denial of claim, no damages, and therefore no liability.

In short, issues of material fact preclude summary judgment for the Wrights on their insurance bad-faith claim.

### 3.2.2  Genuine issues of material fact preclude summary judgment on the Wrights' breach of contract claim.

Under Washington law, "a plaintiff in a contract action must prove a valid contract between the parties, breach, and resulting damage." *Lehrer v. State, Dep't of Soc. & Health Servs.*, 5 P.3d 722, 727 (2000) (citing *Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*, 899 P.2d 6 (1995)). The Wrights allege that State Farm breached its contractual duty "to promptly investigate and pay all benefits owed under [their] Policy" and "to act reasonably and in good faith in the investigation and adjustment of their insurance claim[.]" Dkt. No. 1-2 at 8. State Farm, of course,

denies this charge, pointing to evidence of its compliance with the terms of the insurance contract. On this record, there is a genuine dispute of fact about whether State Farm promptly investigated and paid for all covered loss under the applicable policy limits. And even assuming without deciding that State Farm breached its contractual duties, State Farm points to genuine issues of material fact about whether the Wrights suffered any damages. *See supra* § 3.2.1 (discussing possible overpayment of losses). As such, summary judgment for the Wrights on their breach of contract claim is unwarranted.

### 3.2.3 Genuine issues of material fact preclude summary judgment on the Wrights' CPA claim.

A CPA claim entails five elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). Here, the Wrights argue that State Farm's bad faith creates CPA liability. Perhaps. But as discussed above, State Farm offers evidence that the Wrights were fully, or even overly, compensated for their losses and therefore suffered no injury. *Supra* § 3.2.1. Thus, setting aside the other elements of a CPA claim, there are jury questions about whether the Wrights suffered actual, cognizable injury that preclude summary judgment on this claim.

### 3.2.4 Genuine issues of material fact preclude summary judgment on the Wrights' IFCA claim.

"IFCA provides that any 'first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action ... to recover the actual damages sustained.'" *Heide v. State Farm Mut. Auto. Ins. Co.*, 261 F. Supp. 3d 1104, 1107 (W.D. Wash. 2017) (citing RCW 48.30.015(1)). The Wrights argue that State Farm's unreasonably low benefit offers give rise to IFCA liability. *See* Dkt. No. 88 at 29. Again, this may be so. But "IFCA claims require that the insurer's unreasonable act or acts result in the unreasonable denial of the insured's claim, and any IFCA damages must be caused by that denial." *Beasley v. GEICO Gen. Ins. Co.*, 517 P.3d 500, 517 (2022). As discussed above, the Court finds jury-triable questions of fact about whether State Farm denied coverage at all and whether the Wrights suffered any damages from State Farm's management of their claim. *Supra* § 3.2.1. These issues must be resolved at trial. Thus, summary judgment for the Wrights is inappropriate on this claim.

## 3.3 State Farm's motion for summary judgment.

### 3.3.1 The Wrights raise a genuine issue of material fact about State Farm's liability for breach of contract.

State Farm moves for summary judgment on the Wrights' breach of contract claim on two grounds: first, "[t]he Wrights cite no provision of the Policy in their broad breach of contract claim that State Farm purportedly breached"; and second, "the Wrights cannot show damages proximately caused by State Farm's broad, vague, breach allegation." Dkt. No. 85 at 9. The Court disagrees.

As to the first contention, the Court finds that the Wrights adequately cite contractual duties that State Farm allegedly breached. In their complaint, the Wrights allege that State Farm breached its contractual duty "to act reasonably and in good faith in the investigation and adjustment of their insurance claim[.]" Dkt. No. 1-2 at 8. According to the Wrights, the duty of good faith is "[e]mbedded in every insurance contract" in Washington State. Dkt. No. 113 at 13. The Court agrees. *See Tank v. State Farm Fire & Cas. Co.*, 715 P.2d 1133, 1136 (1986) (noting that an insurer's fiduciary duty to their insured "exists… as a result of the contract between insurer and insured"). And the Wrights adequately assert facts from which a jury could conclude that State Farm breached this duty. *See supra* § 3.2.1 (citing factual assertions supporting the Wrights' bad-faith claim). As such, the Court cannot find as a matter of law that State Farm did not breach its contractual duties.

As to State Farm's claim that the Wrights cannot show damages, the Wrights counter that "Plaintiffs remain unpaid for covered benefits that Defendant has knowingly withheld, such as their increased cost of meals, personal property, and benefits due for their furnace replacement." Dkt. No. 113 at 15. While the factual merit of this position is far from clear, it is not without evidentiary support. *See, e.g.*, Dkt. No. 89 ¶ 3 (Derenski Declaration) ("After Tim Treat acknowledged he would consider reviewing bank statements to prove the Wrights' incurred meal expenses while they stayed in the hotel, the Wrights supplemented their discovery responses with bank statements proving the costs but they have not been paid."); Dkt. No. 89-5 at 3 (Plaintiffs' Supplemental Answer to State Farm's Interrogatories) ("The gas heating furnace estimate we submitted was $10,002.73. That did not

ORDER DENYING SUMMARY JUDGMENT MOTIONS - 11

include the estimate for our water heater. State Farm paid $8,015.45 for our water heater and furnace including installation. We were able to replace our water heater for $1,752.24. We cannot find anyone to replace our furnace, for the balance of State Farm's payment of $6,263.21. Our furnace had smoke/soot damage, was wet, and went through a freeze shortly after the fire that froze pipes in our basement located near the furnace. We estimate we are owed… $3,739.52 for the furnace.") Further, the Wrights dispute State Farm's position that the Wrights were overcompensated for the value of their home. Dkt. No. 113 at 22 ("Peterson formed his 'value' opinions [about the Wrights' home] using websites like Zillow."). These evidence-backed contentions point to genuine issues of material fact about whether the Wrights were damaged by State Farm's alleged breach of contract.

As such, the Court cannot grant summary judgment in State Farm's favor on the Wrights' breach of contract claim.

### 3.3.2  The Wrights raise a genuine issue of material fact about State Farm's liability for insurance bad faith.

State Farm moves for summary judgment on the Wrights' bad-faith claim, arguing it fully accepted the Wrights' insurance claim, provided ample coverage, and even overcompensated the Wrights for their losses. Dkt. No. 85 at 7. As discussed above, *supra* § 3.3.1, the Wrights raise genuine issues of fact calling into question whether State Farm acted in bad faith and denied coverage. As such, the Court cannot resolve the Wrights' insurance bad-faith claim as a matter of law.

### 3.3.3 The Wrights raise a genuine issue of material fact regarding State Farm's liability under the CPA.

State Farm moves for summary judgment on the Wrights' CPA claim on similar grounds—i.e., that State Farm fully accepted the Wrights' claim and amply covered all losses. Dkt. No. 85 at 8. Again, this may be so. But the Court cannot make such a finding on summary judgment.

As the Wrights rightly point out, "It is well established that insureds may bring private CPA actions against their insurers for breach of the duty of good faith or for violations of Washington insurance regulations." Dkt. No. 113 at 25 (citing *Peoples v. United Servs. Auto. Ass'n*, 452 P.3d 1218, 1221 (2019)). To the extent that the Wrights raise genuine issues of material fact to preclude summary judgment in State Farm's favor on their bad-faith claims, they also survive summary judgment on their CPA claims. Likewise, the fact that State Farm only agreed to cover the Wrights' contractor's full estimate in March 2023—after the commencement of this litigation—supports the Wrights' assertion that "Plaintiffs had to initiate litigation to receive their structural benefits due under the policy." *See* Dkt. No. 113 at 20 (citing WAC 284-30-330 (7)) ("Compelling a first party claimant to initiate or submit to litigation, arbitration, or appraisal to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such actions or proceedings."). As such, the Court denies State Farm's motion for summary judgment on the Wrights' CPA claims.

### 3.3.4 The Wrights raise a genuine issue of material fact about State Farm's liability under IFCA.

State Farm argues that the Wrights' IFCA claim fails as a matter of law because the undisputed evidence shows no claim denial and no damages. Dkt. No. 85 ay 7. As discussed above, *see supra* §3.3.1, the Court cannot make such findings on the record available. The Wrights raise genuine issues of material fact that their claim was effectively denied and that they suffered damages as a result. As such, the Court denies State Farm's motion for summary judgment on the Wrights' IFCA claim.

## 4. CONCLUSION

In sum, the Court finds that genuine issues of material fact preclude summary judgment on all pending claims in this case. Accordingly, the Court DENIES State Farm's motion for summary judgment, Dkt. No. 85, and DENIES the Wrights' motion for summary judgment, Dkt. No. 88.

It is so ORDERED.

Dated this 17th day of January, 2025.

Jamal N. Whitehead
United States District Judge