UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL WRIGHT; ALEXIS WRIGHT,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>Defendant. | CASE NO. 2:23-cv-179<br><br>ORDER DENYING PLAINTIFFS' MOTION TO EXCLUDE |

## 1.  INTRODUCTION

Plaintiffs Michael and Alexis Wright (the "Wrights") move to exclude the testimony of Defendant State Farm Fire and Casualty Company's ("State Farm") construction and repair expert, Eugene Peterson. Dkt. No. 90. Having reviewed the record, the parties' briefing, and the law, and being fully informed, the Court, for the reasons explained below, DENIES the motion to exclude.

## 2.  BACKGROUND

In November 2021, a fire caused severe damage to the Wrights' home, located in Goldendale, Washington, a rural area about 70 miles from Yakima, Washington.

Dkt. No. 89-1 at 2. The Wrights filed a claim with their insurer, State Farm, which immediately confirmed coverage. *Id.*

In January 2022, the adjuster assigned to the Wrights' file, Timothy Treat, finalized his initial estimate for the structural repair of the Wrights' home. Dkt. No. 89-6 at 7-9. To do so, he used a software called Xactimate, which uses data on labor and material costs to estimate total repair costs. *Id.* Xactimate yielded an estimate for the Wrights' home repair in the amount of $181,277.82. *Id.*

According to the Wrights, because they lived in Goldendale, a rural location, it took them several months to find a contractor willing to perform the repair. Dkt. No. 89-2 at 11. By June 2022, they found a company willing to do the work for an estimated total cost of $259,244.61—nearly $80,000 above State Farm's Xactimate estimate. Dkt. No. 89-1 at 49.

In November 2022, after extensive back-and-forth, the Wrights brought contractual and extracontractual claims against State Farm, alleging that State Farm failed to properly investigate and cover their losses. Dkt. No. 1. Among other arguments, the Wrights assert that State Farm uses Xactimate, which "is designed with input and pricing data primarily sourced from the insurance industry," to intentionally achieve "cost containment." Dkt. No. 88 at 17.

At trial, State Farm intends to offer opinion testimony from construction and repair expert Eugene Peterson "regarding [among other topics] the reasonableness of State Farm's use of Xactimate to create repair estimates in this matter." Dkt. No. 102 ¶ 1. Peterson has worked with the Xactimate since 1991, including beta testing

new iterations of the program, training contractors on how to use the software, and creating the first online Xactimate training syllabus. *Id.* ¶¶ 2-3.

In January 2024, Peterson submitted an expert report rebutting the report of the Wrights' expert, Al Meads. Dkt. No. 91-1. Meads, opining that State Farm's repair estimate was too low, stated in his report that "State Farm estimates are written using the price lists from Yakima, Washington, which is over 70 miles from the loss location [in Goldendale]." *Id.* at 3. Meads also stated that "the pricing is based on using a 'big box' store for the materials," but that "[s]ince there are no such outlets in Goldendale…, there will be additional cost either from buying locally from a local vendor, or incurring the costs in time and production by traveling to one of these outlets." *Id.* In his rebuttal, Peterson stated that Meads's assertions were technically "true"—"the regional price list expected to be used for the Goldendale, WA area is the Yakima, Washington price list"—but that "[t]he adjuster chose and applied an option found in the Xactimate estimating software for rural settings to account for the rural location." *Id.* Peterson explained, "[w]hen this option is applied, the software automatically factors and applies additional dollars to each line item to account for the increased labor and materials costs and the difficulty of working in a rural setting." *Id.* Likewise, Peterson stated that this "'rural/remote' setting factors in some of the difficulties of material accusation [sic], by bumping pricing of materials so that purchase can be made locally." *Id.*

But Peterson may have been wrong about Treat applying the "rural/remote" setting when estimating the Wrights' repair costs. When Treat was asked during his deposition whether he was familiar with the "site access" drop-down feature, he

ORDER DENYING PLAINTIFFS' MOTION TO EXCLUDE - 3

testified, "I have not seen this."[1] Likewise, when Peterson was deposed in October 2024, he admitted that he "cannot say for certainty that [Treat] did [use the "rural/remote" feature]." Dkt. No. 91-2 at 5.

The Wrights now move to exclude Peterson's expert testimony, arguing that Peterson's mistaken claim that Treat used the "rural/remote" feature renders Peterson's opinion testimony "unsubstantiated, speculative, lack[ing] foundation, amount[ing] to legal opinions, and otherwise [ ] not comport[ing] with Fed. R. Evid. 702 and 703." Dkt. No. 90 at 1.

### 3.  DISCUSSION

**3.1   Legal standard.**

Rule 702 of the Federal Rules of Evidence governs the admission of expert opinion testimony in federal court:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 is to be applied with a "liberal thrust favoring admission, [but] it requires that expert testimony be both relevant and reliable."

---

[1] The Court notes, however, that this deposition testimony lacks support in the record. The Wrights cite to "Derenski Decl., Ex. 3, 72:21-73:8." Dkt. No. 90 at 4. However, those deposition pages are not attached with the excerpts from Treat's deposition at Dkt. No. 91-3.

ORDER DENYING PLAINTIFFS' MOTION TO EXCLUDE - 4

*Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (cleaned up). "Expert opinion testimony is *relevant* if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is *reliable* if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006) (emphasis added) (quotation marks and citation omitted). The proponent of expert testimony bears the burden of establishing relevance and reliability. *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995). When this burden is met, "the expert may testify and the jury decides how much weight to give that testimony." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010).

When assessing reliability under Rule 702, courts inquire "not [about] the correctness of the expert's conclusions but [about] the soundness of his methodology." *Daubert*, 43 F.3d at 1318. The Supreme Court set forth several factors in *Daubert* that courts may consider in assessing reliability, such as scientific testing, peer review and publication, error rates, and scientific consensus. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593–94 (1993). This is a "flexible" inquiry, *id.*, and courts have "broad latitude" in deciding "whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case[.]" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999). "Shaky but admissible evidence" is to be attacked by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof," not exclusion. *Daubert*, 509 U.S. at 596.

### 3.2 State Farm has shown, by a preponderance of evidence, that Peterson's opinions are relevant and reliable.

The crux of the Wrights' motion to exclude is that Peterson's expert testimony is unreliable because he "bases his opinion on a false premise, the premise that Mr. Treat knew of and used a critical feature of the software program which adjusts for remote sites such as the Wrights' home." Dkt. No. 90 at 6.

In their reply brief, the Wrights provide other, additional grounds on which to question the reliability and relevance of Peterson's opinions. *See* Dkt. No. 112. For example, they point to Peterson's allegedly false assertion that "Plaintiff Mr. Wright completed the painting of their home." *Id.* at 3 (citing Dkt. No. 91-1 at 5). And they dispute the relevance and reliability of Peterson's opinion "as to the value of Plaintiffs' home[.]" *Id.* at 4. Because these later arguments were improperly raised in a reply brief, the Court declines to consider them. *See Yageo Am. Corp. v. Tseng*, No. C06-0227RSL, 2006 WL 8454994, at *1 (W.D. Wash. Apr. 21, 2006) ("Ordinarily, the Court will not consider issues raised for the first time in a reply brief."). They were unpersuasive in any event.

So the core issue here is whether Peterson's statements about State Farm's use of the "rural/remote" feature in the Xactimate software render his entire opinion testimony unreliable. The answer is no. Peterson has been working with Xactimate for over thirty years. He easily clears the expertise threshold set by *Daubert* and Rule 702. And the Court is not persuaded that his potential factual error about State Farm's use of the "rural/remote" feature renders his entire opinion testimony unreliable. Most of the opinions expressed in Peterson's rebuttal report are in fact

ORDER DENYING PLAINTIFFS' MOTION TO EXCLUDE - 6

unrelated to the "rural/remote" feature. *See, e.g.*, Dkt. No. 91-1 at 4 ("The home was stripped down to the studs, so installing electrical wiring, etc., would be no more difficult than wiring a new home.") To exclude such expert testimony would hinder objective factfinding and unduly prejudice State Farm.

Moreover, on the record available, the Court cannot conclude that Peterson's assertion about Treat's use of the "rural/remote" feature was indeed false. The Wrights cite Treat's deposition, in which he allegedly stated that he had never seen the "rural/remote" feature. Dkt. No. 90 at 4. But the portion of the deposition transcript to which they cite is missing from their evidentiary filing. *See* Dkt. No. 91-3.

Even assuming that Treat did express unfamiliarity with the "rural/remote" feature in his deposition—meaning Peterson was likely incorrect about its use here—this error would go to the weight, not admissibility, of Peterson's testimony. For, when the baseline requirement of reliability is met, the "factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Bluetooth SIG, Inc. v. FCA US LLC*, 468 F. Supp. 3d 1342, 1349 (W.D. Wash. 2020) (citation and quotation marks omitted). The Wrights are free on cross-examination to ask Peterson, for example, whether he knows for certain that Treat used the "rural/remote" feature when estimating the Wrights' home repair costs. And they are also free to ask him whether, hypothetically, failure to use this feature would lead to an underestimate of rural home repair costs. Such testimony

might aid their case. But they have not presented grounds to exclude his testimony entirely.

### 4. CONCLUSION

The Court finds that State Farm has met its burden of proving by a preponderance of the evidence that the opinion testimony of its construction and repair expert, Eugene Peterson, is relevant and reliable. The Court DENIES the Wrights' motion to exclude Peterson's expert testimony.

It is so ORDERED.

Dated this 21st day of January, 2025.

Jamal N. Whitehead
United States District Judge